**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**KEVIN E. DENNIS,**

    **Petitioner,**

    v.

**UNITED STATES OF AMERICA,**

    **Respondent.**

**CASE NO. 2:07-CV-1313
CRIM. NO. 2:05-CR-248(2)
JUDGE SARGUS
MAGISTRATE JUDGE KING**

## REPORT AND RECOMMENDATION

This is an action under 28 U.S.C. § 2255 in which Petitioner alleged that his trial counsel had been constitutionally ineffective in a number of respects. *Motion to Vacate, Set Aside, or Correct Sentence,* Doc. No. 44 [hereinafter "*Petition*"]. For purposes of the present proceedings, Petitioner specifically alleged:

> Counsel was constitutionally ineffective for failing to perfect Dennis' requested notice of appeal and failing to consult with Dennis after sentencing concerning his appeal.

*Id*. at 20. This Court rejected Petitioner's claims. *Report and Recommendation*, Doc. No. 72; *Opinion and Order*, Doc. No. 78. In an opinion issued on August 3, 2011, the United States Court of Appeals for the Sixth Circuit found that the record reflected a factual dispute in connection with Petitioner's allegation that he had informed his attorney, after sentencing, that he wished to file an appeal. The Sixth Circuit therefore remanded the action:

> . . . [W]e vacate the district court's judgment and remand with instructions to conduct an evidentiary hearing to determine whether Dennis requested counsel to file a notice of appeal. Because Dennis's other issues concerning counsel's failure to consult with him about an appeal of non-frivolous issues are related to the issue remanded, we take no position on them at this time.

*Dennis v. United States of America*, No. 10-3491 (6th Cir. Aug. 3, 2011), Doc. No. 88. New counsel

was thereafter appointed for Petitioner and, on June 21, 2012, an evidentiary hearing was held. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that the petition for a writ of habeas corpus be **GRANTED** on Petitioner's claim that he was denied the effective assistance of counsel because his attorney failed to consult with him regarding the filing of an appeal. *See Roe v. Flores-Ortega*, 528 U.S. 470, 478 (2000). It is further **RECOMMENDED** that the final judgment in this case, Doc. No. 41, be **VACATED** and that a new judgment be entered so that a timely notice of appeal may be filed on Petitioner's behalf.

## BACKGROUND

Petitioner's March 2, 2006, convictions on charges of health care fraud, manufacturing cocaine base and possession of a firearm in furtherance of a drug crime are the result of his negotiated *Plea Agreement*. Doc. No. 23. On February 1, 2007, the Court imposed an aggregate sentence of 157 months incarceration. Doc. Nos. 40, 41. The transcript of Petitioner's sentencing hearing, *Sentencing Transcript*, attached to *United States Response in Opposition to Defendant's § 2255 Motion*, Doc. No. 51, indicates that the Court advised Petitioner of his right to appeal and that the appeal must be filed within ten days. Petitioner expressed no interest in filing an appeal at that time:

> COURT: Mr. Dennis, it is. . . my obligation to advise you of your right to appeal the sentence that I have just imposed. If you wish to do so, you must file a written notice of appeal within ten days from today's date. If you are unable to afford the filing fee or a lawyer to represent you, you may apply to this Court, and the filing fee may be waived and a lawyer appointed to represent you. Do you understand your right to appeal?
>
> DEFENDANT: Yes, sir.
>
> COURT: Do you wish for me to file a notice of appeal on your behalf at this time?

> DEFENDANT: Not at this time, sir.
>
> COURT: You have ten days if you change your mind.

*Id.* at 11-12.

In his *Petition*, Petitioner alleged:

> During sentencing the Court advised me that I had a right to appeal the sentence and asked me if I wanted to appeal. I was unaware that I could appeal the sentence at that time, and advised the Court not at this time. I informed counsel Pfeuffer that I needed to talk with him. On or about February 6, 2007, I wrote counsel Pfeuffer a letter and informed him that I wanted to appeal my sentence and to know the process of the appeal.

*Affidavit of Kevin Dennis*, attached to *Petition*, ¶13. Petitioner's defense attorney, Alan Pfeuffer, responded to that allegation, in relevant part, as follows:

> Kevin Dennis never expressed any interest in appealing his sentence, nor did he ever communicate his desire to appeal his sentence, either telephonically, in person, or in writing

*Affidavit of Alan J. Pfeuffer,* ¶ 5, attached to *Supplemental Response in Opposition to Defendant's § 2255 Motion,* Doc. No. 67.

## EVIDENTIARY HEARING

Petitioner's convictions carried a mandatory minimum term of imprisonment of ten (10) years.[1] However, the *Plea Agreement*, Doc. No. 23, also specified that if Petitioner provided substantial assistance in the investigation or prosecution of others, the government might, in its sole discretion, request a downward departure in sentencing pursuant to U.S.S.G. § 5K1.1.[2] *Id.* ¶ 18;

---

[1] The statutory mandatory minimum included two consecutive five year terms on the charges of possession of a firearm in furtherance of a drug trafficking crime and manufacturing of cocaine base. *Plea Agreement*, ¶ 2, Doc. No. 23; *Transcript, Evidentiary Hearing*, Doc. No. 116, p. 25.

[2] 18 U.S.C.A. § 5K1.1 provides:

*Evidentiary Hearing Transcript,* Doc. No. 116, p. 24. Petitioner testified at the evidentiary hearing that he was debriefed by the Assistant United States Attorney, police and other law enforcement personnel on eight to ten occasions. *Id*. at 37. However, the government did not file a motion for a downward departure.[3] *Sentencing Transcript*, p. 6. His attorney requested a downward variance and a sentence of 120 months, *Sentencing Transcript*, p. 5; *Evidentiary Hearing Transcript*, p. 96, but, as noted *supra*, a sentence of 157 months imprisonment was actually imposed. *Sentencing Transcript*, p. 10; *Evidentiary Hearing Transcript*, p. 96.

Petitioner had anticipated, because of his assistance, a sentence much lower than that eventually imposed. *Evidentiary Hearing Transcript*, p. 46, and his counsel knew that Petitioner was unhappy with the sentence. *Id*. at 97. Nevertheless, as noted, Petitioner declined the Court's

---

Substantial Assistance to Authorities (Policy Statement)

Upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines.

(a) The appropriate reduction shall be determined by the court for reasons stated that may include, but are not limited to, consideration of the following:

(1) the court's evaluation of the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered;

(2) the truthfulness, completeness, and reliability of any information or testimony provided by the defendant;

(3) the nature and extent of the defendant's assistance;

(4) any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance;

(5) the timeliness of the defendant's assistance.

[3]That decision was apparently based on the fact that Petitioner's testimony at the bond hearing for Petitioner's former wife was perceived as inconsistent with information provided by Petitioner during his debriefings. *Evidentiary Hearing Transcript*, p. 89.

offer at sentencing to file a notice of appeal "at this time." *Sentencing Transcript*, pp. 11-12. At the evidentiary hearing, Petitioner explained that this response was based on his unfamiliarity with the appeal process.

> I didn't understand it. I really didn't understand the process or anything – I hadn't discussed with my attorney anything about an appeal. So I didn't know exactly what the advantages or the disadvantages would be, what kind of – ... liabilities I could face or, you know, what purpose it would serve. I mean just filing an appeal about what? I didn't know about what.

*Id*. at 47. Petitioner testified that told his attorney, as they were leaving the courtroom after sentencing, that they needed to talk. *Id*. at 48.

> Q. Right after sentencing, you turned to him and said, we need to talk?
>
> A. Before the sentencing and after the sentencing.

*Id*. at 74. Attorney Pfeuffer conducted a "closing ceremony" with Petitioner after sentencing, but could not recall whether that was in person at the Ross County Jail, where Petitioner had been housed, or by telephone. *Id.* at 97-98. Petitioner does not recall that his attorney visited him at the Ross County Jail after sentencing. *Id*. at 48. However, Petitioner and Mr. Pfeuffer agree that they never discussed the details of the appeals process or the advantages or disadvantages of pursuing an appeal of his sentence. *Id*. at 48, 98.[4] Petitioner remained at the Ross County Jail for six more days, after which he was transferred to a Bureau of Prisons ["BOP"] processing center. *Id*. at 47-48.

---

[4]Attorney Pfeuffer visited Petitioner at the Ross County Jail, where Petitioner had been housed while awaiting sentencing, the day before the sentencing hearing in order to prepare Petitioner for the sentencing. *Evidentiary Hearing Transcript*, pp. 98-99, 116-17. Although Mr. Pfeuffer did not discuss at that time the advantages and disadvantages of filing an appeal, *id*. at 98, he spent "[p]robably five minutes or less," *id*. at 100, discussing appeals and "what is typically appealable."
> I explain there are certain things that are difficult, denial of a 5K1 if the U.S. Attorney doesn't move for. And I also discuss what reasonableness is in a generic sense as the law was developed at that time.

*Id.* at 99.

Petitioner acknowledges that he never verbally requested Mr. Pfeuffer to file an appeal. *Id.* at 48. However, Petitioner testified that, shortly before he was transferred from the Ross County Jail (and still within the period for filing a timely appeal), he wrote a letter to Mr. Pfeuffer, asking for information and advice on the filing of an appeal and expressly requesting that his attorney file the appeal. *Id.* at 48-49. Petitioner has no copy of the letter but explained that he did had no access to a photocopying machine at the jail. *Id.* at 52. The letter was not sent by certified mail because he could not do so from the jail. *Id.* Petitioner testified that he mailed this letter by placing it on a table in the jail provided to inmates for that purpose. *Id.* at 49. When asked why he did not telephone his attorney, Petitioner responded:

> Well, I had written him a letter. And I still thought I had like ten days . . . to call him. So I was going to wait and call him if I felt like it. But I really didn't think much about it. I just wrote him a letter and anticipated that he would contact me, or he would go ahead and he would just file an appeal, or come down and see me or come down and talk to me about it.

*Id.*

Petitioner was eventually transferred from the BOP processing center to the Federal Correctional Institution in Jesup, Georgia. He had assumed that his attorney had received the letter, *id*. at 76,

> [but] the time started to go by, and I hadn't heard from him, and I started getting a little bit more concerned, and I said, well, you know, I need to find out. . . what's going on with my. . . appeal.

*Id*. On September 18, 2007, Petitioner sent a certified letter to Mr. Pfeuffer:

> On February 6 &7, 2007, I wrote you a letter requesting that you go head [sic] and appeal my sentence. I have not heard from you since that time. Nor have I received a copy of the Appellant's Brief.

6

*Defendant's Evidentiary Hearing Exhibit 6*; *Evidentiary Hearing Transcript*, pp. 51-52. Petitioner received no response from Mr. Pfeuffer to this letter. *Evidentiary Hearing Transcript*, p. 52. On October 12, 2007, Petitioner wrote another letter to Mr. Pfeuffer demanding a copy of Petitioner's case file and indicating that he intended to file a motion under 28 U.S.C. § 2255 attacking his counsel's performance. *Defendant's Evidentiary Hearing Exhibit 7.* Petitioner's attorney responded in a letter dated October 23, 3007. *Defendant's Evidentiary Hearing Exhibit 8.*

Mr. Pfeuffer testified at the evidentiary hearing that he did not receive a letter from Petitioner directing that an appeal be filed on Petitioner's behalf. *Evidentiary Hearing Transcript*, pp. 100, 131. In fact, Mr. Pfeuffer did not recall that he and Petitioner corresponded by letter. *Id.* at 115. As Petitioner acknowledged at the evidentiary hearing, he had had many contacts with Mr. Pfeuffer prior to sentencing. *Id.* at 73. His attorney visited him in detention or Petitioner called his attorney at the office of the Federal Public Defender, which accepts all collect calls. *Id.* at 74, 115.

Mr. Pfeuffer could not, of course, deny that Petitioner had mailed a letter to him from the Ross County Jail. *Evidentiary Hearing Transcript*, p. 100. He also testified that the Office of the Federal Public Defender had "not gotten mail, on occasion, from inmates who say they sent it." *Id.* at 107. According to Mr. Pfeuffer, mail procedures at the office were insecure and had changed over time.

> They started with a centralized process where they were opened by the secretaries at their desks. . . . That changed during or after the anthrax scare. They were then required to open the mail only in secured areas. . . that eventually sun-setted, and then they were back to opening the mail wherever, and then putting it into our boxes. But it has changed with regard to even whether they open the envelope.
> There were times when the envelope was not to be opened. It was to be put in the attorney's box. Then that changed to where every piece of mail was opened, and it was stamped with a date

7

stamp.

*Id*. at 108.

Mr. Pfeuffer also testified that an appeal on Petitioner's behalf could have been ethically pursued:

> Q. And, so, you couldn't – I mean, you wouldn't now say that it would be frivolous or would have been frivolous to appeal a 157-month sentence for a first-time, nonviolent offender?
>
> A. I would not have had the information and the benefit of the case law since then.
>
> \*\*\*
>
> Q. [Y]ou're not suggesting that you could not ethically have appealed Mr. Dennis' sentence, are you?
>
> A. No, not in any way.

*Id.* at 132-33.

## DISCUSSION

The failure of an attorney to file a timely appeal upon a defendant's request constitutes the ineffective assistance of counsel.

> [E]very Court of Appeals that has addressed the issue has held that a lawyer's failure to appeal a judgment, in disregard of the defendant's request, is ineffective assistance of counsel regardless of whether the appeal would have been successful or not. *See Castellanos v. United States,* 26 F.3d 717, 719 (7th Cir.1994); *United States v. Peak*, 992 F.2d 39, 42 (4th Cir.1993); *United States v. Horodner*, 993 F.2d 191, 195 (9th Cir.1993); *Bonneau v. United States*, 961 F.2d 17, 23 (1st Cir.1992); *United States v. Davis*, 929 F.2d 554, 557 (10th Cir.1991); *Williams v. Lockhart*, 849 F.2d 1134, 1137 n. 3 (8th Cir.1988). We agree with those courts and hold that the failure to perfect a direct appeal, in derogation of a defendant's actual request, is a per se violation of the Sixth Amendment.

*Ludwig v. United States,* 162 F.3d 456, 459 (6th Cir. 1998).

> In those cases where the defendant neither instructs counsel to file an appeal nor asks that an appeal not be taken. . . the question whether counsel has performed deficiently by not filing a notice of appeal is best answered by first asking a separate, but antecedent, question: whether counsel in fact consulted with the defendant about an appeal. We employ the term "consult" to convey a specific meaning-advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes. If counsel has consulted with the defendant, the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal. . . . If counsel has not consulted with the defendant, the court must in turn ask a second, and subsidiary, question: whether counsel's failure to consult with the defendant itself constitutes deficient performance.

*Roe v. Flores-Ortega,* 528 U.S. at 478 (citation omitted). In addressing the issue of whether an attorney performs in a constitutionally ineffective manner by failing to consult with a criminal defendant regarding the filing of an appeal, the Supreme Court in *Roe v. Flores-Ortega* rejected a "bright-line rule" and concluded "that the Federal Constitution imposes one general requirement: that counsel make objectively reasonable choices." *Id*. at 479-80.

An attorney would not act unreasonably in failing to consult with his client regarding an appeal, for example, where the defendant pleads guilty, is sentenced as anticipated, is advised by the trial court of his right to appeal, expresses no interest in appealing and there exist no nonfrivolous grounds for appeal. *Id.* Similarly, where "a sentencing court's instructions to a defendant about his appeal rights in a particular case are so clear and informative as to substitute for counsel's duty to consult. . . . counsel might then reasonably decide that he need not repeat that information." *Id*. at 479-80.

> [C]ounsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular

9

> defendant reasonably demonstrated to counsel that he was interested in appealing. In making this determination, courts must take into account all the information counsel knew or should have known. . . . Although not determinative, a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings. Even in cases when the defendant pleads guilty, the court must consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights. Only by considering all relevant factors in a given case can a court properly determine whether a rational defendant would have desired an appeal or that the particular defendant sufficiently demonstrated to counsel an interest in an appeal.

*Id*. at 480.

Here, Petitioner's testimony that he told his attorney immediately after sentencing that he needed to speak with him is uncontroverted. Likewise, the parties do not dispute that defense counsel did not discuss with Petitioner at any time after sentencing the advantages and disadvantages of filing an appeal. The Court declines to credit, however, Petitioner's allegation and testimony that he sent a letter to Mr. Pfeuffer in February 2007 directing that an appeal be pursued on Petitioner's behalf: Mr. Pfeuffer credibly testified that he received no such letter, Petitioner has no copy of such a letter and Petitioner offered no credible explanation why he communicated with his counsel on this critical matter by letter rather than by collect telephone call, as had been his practice. Thus, this Court finds that Petitioner did not request his counsel to file an appeal on Petitioner's behalf within the time permitted for filing an appeal. Defense counsel did not, therefore, perform in a constitutionally ineffective manner by failing to file an appeal after having been requested to do so.

This Court must also consider whether, under the circumstances presented in this case, defense counsel had a constitutional duty to consult with Petitioner after sentencing regarding the

filing of an appeal.[5] Petitioner was sentenced on February 1, 2007. At that time, Mr. Pfeuffer testified, the ramifications on federal sentences of *United States v. Booker,* 543 U.S. 220 (2005)(Sixth Amendment prohibits imposition of sentence based on judicial fact-finding; United States Sentencing Guidelines are no longer mandatory but advisory only) had not yet been fully explored or elucidated. He could not say that Petitioner's sentence was not appealable or presumptively reasonable for appeal purposes, even though Petitioner's sentence fell within the recommended guideline range. *Evidentiary Hearing Transcript*, pp. 132-33.[6] Under all the circumstances presented in this case – *i.e.*, Petitioner's expressed unhappiness with his sentence, his indication to counsel following the sentencing that he needed to speak with counsel and the uncertainty at that time of *Booker's* impact on federal sentences – the Court concludes that defense counsel was constitutionally obligated to inquire whether Petitioner wanted to pursue an appeal and to consult with Petitioner regarding the advantages and disadvantages of doing so. *See Roe v. Flores-Ortega*, 528 U.S. at 470. Counsel's failure to consult with Petitioner therefore warrants relief in this case.

It is therefore **RECOMMENDED** that the *Petition* be granted on Petitioner's claim that he was denied the effective assistance of counsel because his attorney failed to consult with him

---

[5]Respondent argues that the only task before this Court pursuant to the order of remand is to determine whether Petitioner requested that his attorney file an appeal. *Government's Response to Petitioner Dennis' Pleading Bearing Docket #117*, Doc. 118. This Court disagrees. As noted *supra*, the Sixth Circuit characterized Petitioner's complaints that his "counsel's failure to consult with him about an appeal of non-frivolous issues are related to the issue remanded." *Dennis v. United States of America,*, No. 10-3491, Doc. No. 88, p. 4. Nothing in the order of remand prohibits this Court's consideration of petitioner's claim in this regard. Indeed, the order of remand arguably requires consideration of this "related" issue.

[6] Petitioner also suggests that there existed other nonfrivolous grounds for appeal. *Petitioner's Post-Hearing Brief*, Doc. No. 117. This Court need not address these suggestions.

regarding the filing of an appeal. It is further **RECOMMENDED** that the judgment previously entered in this case, Doc. No. 41, be vacated, that a new judgment be entered and that a timely notice of appeal be filed on Petitioner's behalf.

If any party objects to this *Report and Recommendation,* that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir.1981).

September 14, 2012                                                    *s/ Norah McCann King*
                                                                                   Norah McCann King
                                                                                   United States Magistrate Judge